IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

JOHN OXENDINE

Criminal Action No.

1:22-CR-00183-SCJ-RDC

**Opposition to Defendant's Objections to Final Report and Recommendation**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Christopher J. Huber and David A. O'Neal, Assistant United States Attorneys for the Northern District of Georgia, files this Opposition to Defendant's Objections to Final Report and Recommendation.

Defendant John Oxendine filed a Motion to Dismiss Superseding Indictment (Doc. 22), Motion to Dismiss Count Two as Time Barred (Doc. 51), Motion to Suppress Statements (Doc. 24), Motion for a Bill of Particulars, (Doc. 23), and Motion to Strike Surplusage (Doc. 25). The government opposed these motions (Docs. 56-60), and Oxendine filed replies with respect to three of his motions. (Docs. 62-64). The Magistrate Judge held a hearing on the motion to suppress. (Doc. 33). After full briefing and the evidentiary hearing, the Magistrate Judge issued an Order and Final Report and Recommendation regarding all of Oxendine's motions. (Doc. 66). The court denied the motion for bill of particulars and recommended denial of the remaining motions. Oxendine timely filed

objections. (Doc. 68). The Order and Final R&R correctly applied the law to the facts and this Court should adopt its findings.

## Background

A grand jury returned a superseding indictment against defendant John Oxendine charging him with conspiracy to commit health care fraud, 18 U.S.C. § 1349, and conspiracy to commit money laundering, 18 U.S.C. § 1956(h). As alleged in the indictment, Oxendine conspired with others, including Dr. Jeffrey Gallups, to have medically unnecessary tests performed by a lab in Texas in return for a kickback of 50% of the net profit from insurance payments for those lab tests. (Doc. 43, ¶¶ 2, 3, 4). These kickback payments were made directly to Oxendine, rather than to Gallups, even though the labs were ordered by Gallups's medical practice. (Doc. 43, ¶ 8). That is, the lab in Texas paid Gallups through Oxendine 50% of the profits from the lab texts in order to obtain the lab orders from Gallups's medical practice. Oxendine then paid some expenses for Gallups out of these funds and retained others. (Doc. 43, ¶ 12). The indictment refers to these payments as kickbacks because that it what they were. In a related case, Gallups pleaded guilty to health care fraud for the same scheme. *United States v. Gallups*, 1:21-CR-00370.

During the course of the investigation, two federal agents interviewed Oxendine at his house on September 22, 2020, at approximately 8:00 p.m. (Doc. 34 at 10 (transcript of suppression hearing)). The interview took place with Oxendine standing at his front door, at the top of two steps up from his driveway. (Doc. 34 at 10-11; Doc. 36-2 (photo of Oxendine's house)). The entire

interview was recorded and lasted approximately 17 minutes. (Gov. Ex. 1 (recording of interview)). Neither agent ever drew their gun and Oxendine was never handcuffed, threatened, or told that he was required to speak with the agents. (Doc. 34 at 14, 16-17; *see generally* Gov. Ex. 1). The tone of the interview was friendly and relatively lighthearted. (*See generally* Gov. Ex. 1; Doc. 34 at 31 (Oxendine's counsel characterizing the interview as "the laughing interview")). Oxendine was not arrested. (Doc. 34 at 18). The interview ended with Oxendine saying "Give me a holler. . . . And I'll be happy to talk to you all, okay." (Doc. 36-1 at 20).

The government has produced voluminous discovery to Oxendine, consisting of over 45,000 documents, spanning over 140,000 pages. The discovery includes emails to and from Oxendine (and others), recordings of Oxendine, documents from Gallups's medical practice, and more. The discovery specifically identifies each patient for whom kickbacks were paid, the amount the Texas lab received in payment for those patients, monthly breakdowns of the costs to the Texas lab and the amounts of the kickbacks to Oxendine and Gallups, the checks reflecting those kickbacks written to Oxendine, Oxendine's bank statements reflecting his deposits of those kickback payments, documents reflecting Oxendine's payments from those kickbacks on behalf of Gallups, and Oxendine's agreement with the Texas lab to be paid the kickbacks, among other information.

## Argument

### 1.  Standards of Review

When the Magistrate Court decides a non-dispositive motion, such as the motion for a bill of particulars, this Court acts akin to a court of appeals, and "reviews a magistrate judge's ruling on non-dispositive matters under the clearly-erroneous or contrary-to-law standard." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1327 (11th Cir. 2020) (citing 28 U.S.C. § 636(b)(1)) (other citation omitted); *see also* Fed. R. Crim. P. 59(a).

For the other recommendations, the Court conducts a *de novo* review of those portions of the R&R to which Oxendine has timely and specifically objected. 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667 (1980). For Oxendine's objections to warrant *de novo* review, however, he "must clearly advise the district court and pinpoint the specific findings that [he] disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009). The Eleventh Circuit has stated that "[p]arties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). The remainder of the R&R, to which neither party offers specific objections, will be assessed for clear error only. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373 (N.D. Ga. 2006) ("[I]ssues upon which no specific objections are raised do not so require *de novo* review; the district court

may therefore 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge[,]' applying a clearly erroneous standard.") (quoting 28 U.S.C. § 636(b)(1)).

## 2. Oxendine was not specific in his objections and the Magistrate Court's R&R and Order were not clearly erroneous and should be accepted

Oxendine's objections are not specific. Instead, they merely restate the arguments he made in his motions in a general manner. They do not address with any particularity the Magistrate Court's findings or legal analysis. The Magistrate Court issued a well-reasoned Order and R&R. Each recommendation was supported by case law and relevant factual findings. The resulting thorough Order and R&R is not clearly erroneous. The Court should accept it in whole.

## 3. The Court should accept the findings in the R&R even under *de novo* review

Even if the Court overlooks Oxendine's general, non-specific objections and undertakes a *de novo* review, it should adopt the Magistrate Court's recommendations because they are correct.

## A. The superseding indictment sufficiently alleges intent

Oxendine argues that the indictment fails to allege facts which support Oxendine's knowledge of a conspiracy, citing a single case, *United States v. Fern*, 155 F.3d 1318 (11th Cir. 1998), without analysis. Obj. at 2 (Doc. 68). As the government set out more fully in its brief opposing Oxendine's motion (Doc. 56), Federal Rule of Criminal Procedure 7(c)(1) requires only that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" It is well-established that "'[t]he sufficiency of a criminal indictment is determined from its face.'" *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (quoting *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004)). An indictment meets this standard if it:

> (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

*United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009) (internal quotation marks omitted). Indeed, "[c]onstitutional requirements are fulfilled 'by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime.'" *United States v. Critzer*, 951 F.2d 306, 308 (11th Cir. 1992) (quoting *United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir. 1983)); *see also United States v. Adkinson*, 135 F.3d 1363, 1375 n. 37 (11th Cir. 1998) ("An indictment need do little more than track the language of the statute charged to be sufficient.") (citation omitted)). Moreover, "[i]t is not necessary for

an indictment . . . to allege in detail the factual proof that will be relied upon to support the charges." *Sharpe*, 438 F.3d at 1263 n.3 (citation omitted).

The Superseding Indictment alleges all of the essential facts related to the charged health care fraud conspiracy pursuant to 18 U.S.C. § 1349 and the charged money laundering conspiracy pursuant to 18 U.S.C. § 1956(h). (*See* Doc. 43). It describes the nature of the conspiracy to defraud health care benefit programs, alleges that the conspirators accomplished this conspiracy by pressuring physicians associated with Gallups's ENT practice to order medically unnecessary testing from a testing lab in Texas, who paid kickbacks associated with those referrals, and also discusses specific meetings in which Oxendine and his co-conspirators discussed the conspiracy, and a Ritz Carlton speech in which Oxendine told doctors to order unnecessary testing for their patients. (Doc. 43 ¶¶ 2-4). It also describes the money laundering undertaken by Oxendine and Gallups. (Doc. 43 ¶ 15). The Superseding Indictment, therefore, goes well beyond what is required to charge Oxendine.

The Court should adopt the R&R regarding this motion.

### B.  Count Two is not timed barred

Oxendine complains that Count Two may be time barred, if the government fails to produce evidence to support it allegations that Oxendine received a kickback payment within the statute of limitations. (Doc. 68 at 2). But that is not a basis to dismiss Count Two.

As set forth in more detail in its brief opposing Oxendine's motion (Doc. 57), where, as here, the government is not required to plead an overt act, "the

indictment satisfies the requirements of the statute of limitations if the conspiracy is alleged to have continued into the limitations period." *United States v. McNair*, 605 F.3d 1152, 1213 (11th Cir. 2010). Count Two alleges that the money laundering conspiracy began in or about June 2016 and continued through in or about June 2017. (Doc. 42 ¶ 14). And Oxendine appears to recognize that Count Two sufficiently alleges that the conspiracy continued into June 2017. (Doc. 68 at 2 (Oxendine brief acknowledging the allegations of the Superseding Indictment). Count Two also incorporates paragraphs 2 through 12 of the Superseding Indictment, including the allegations regarding a June 14, 2017, kickback payment that was paid to Oxendine, as set forth in Paragraph 11. (Doc. 42 ¶ 13). Oxendine does not dispute that this was within the five years preceding the indictment. Accordingly, the money laundering conspiracy alleged in Count Two is not barred by the statute of limitations and should not be dismissed.

## C. Oxendine's statements made while standing at his front door were voluntary and should not be suppressed

Oxendine spoke with two federal agents while standing the front door of his home. He now claims that the statements he made were not voluntary and should be suppressed, citing no case law. (*See* Obj. at 3).[1] The Magistrate Court held an evidentiary hearing and the evidence supports the conclusion that

---

[1] Although his objection suggests there is an issue regarding custody, Oxendine has never argued that he was in custody. A defendant has the burden of proving custody. *United States v. Woodson*, 30 F.4th 1295, 1302 (11th Cir. 2022).

Oxendine's statements were voluntary and should not be suppressed. (*See generally* Doc. 34).

As more fully discussed in the government's opposition to the motion to suppress (Doc. 58), the facts and the law show that Oxendine's statements were voluntary. To determine whether a confession "was the product of an essentially free and unconstrained choice," a court considers the totality of the circumstances. *Hubbard v. Haley*, 317 F.3d 1245, 1252–53 (11th Cir. 2003) (quotation omitted). The court should evaluate factors such as "the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police." *Id.* at 1253.

There is nothing in either the recording of the interview, (Gov. Ex. 1), or the testimony regarding the interview, (Doc. 34), that supports the argument that Oxendine's statements were involuntary or that there was any coercive conduct by the agents. The interview was less than twenty minutes total. (Gov. Ex. 1). This weighs heavily against a finding of coercion. *See, e.g., United States v. Winders*, 1:17-CR-00313-ELR-AJB, 2018 WL 5779191, *5 (N.D. Ga. Sept. 17, 2018) (finding a two hour interrogation non-coercive); *United States v. Cobb*, 1:16-CR-281-TCB-RGV, 2017 WL 9472899, *14 (N.D. Ga. June 1, 2017) (finding that an hour-and-half interrogation did not qualify as coercion) (R&R), adopted at 2017 WL 3225063 (N.D. Ga. July 28, 2017). There was no application of physical force or threats by the agents. (Doc. 34 at 14 (no handcuffs, guns not visible); 16-17 (no threats)). Indeed, a review of the recording demonstrates the interview was

conversational. (Gov. Ex. 1). *See United States v. Harrell*, 1:17-CR-00386-SCJ-RGV, 2018 WL 6796172, *4 (N.D. Ga. Sept. 19, 2018) (conversational interview non-coercive). Similarly, the agents made no promises to Oxendine. (Gov. Ex. 1).

The Court should find Oxendine's statements were voluntary, deny his objections, and adopt the R&R.

### D. The motion for a bill of particulars was correctly denied

Oxendine objects to the Magistrate Court's order denying his motion for a bill of particulars. As discussed above, this Court reviews that order under the clearly-erroneous or contrary-to-law standard. Here, the Magistrate Court applied controlling case law and correctly found that "the Superseding Indictment supplies a plethora of information regarding the nature of the alleged conspiracies . . . ." (Doc. 66 at 25).[2] And its conclusion that Oxendine "failed to establish that a bill of particulars is required to allow him to prepare his defense, minimize the risk of prejudicial surprise, or prevent him from pleading double jeopardy in the future" is not clearly erroneous. (Doc. 66 at 27). Therefore, the Court should affirm this Order.

### E. Oxendine and his co-conspirator received kickbacks and the Superseding Indictment's use of that term is not unduly prejudicial

Oxendine complains that the Indictment's use of the word "kickback" to describe his scheme with Dr. Gallups is unfairly prejudicial and it should be stricken from the Indictment. As discussed more fully in the government's brief

---

[2] The government fully briefed this issue in its opposition to Oxendine's motion. (Doc. 60).

in opposition to the motion (Doc. 59), a motion to strike purported surplusage from an indictment should be denied "unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. . . . (T)his is a most 'exacting standard.'" *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (internal quotations omitted). Oxendine does not meet that standard here.

The term fairly describes the payments the lab company made to Oxendine in order to induce Dr. Gallups to send it samples for medically unnecessary testing. As the Magistrate Court found, the definition of "kickback" "accurately encapsulates the scheme described in the Superseding Indictment." (Doc. 66 at 30). Because Oxendine cannot meet his burden, the term "kickbacks" should not be stricken from the indictment.

**Conclusion**

For the foregoing reasons, the Court should adopt the R&R and affirm the Order issued by the Magistrate Court.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*


/s/ CHRISTOPHER J. HUBER
*Assistant United States Attorney*
Georgia Bar No. 545627
chris.huber@usdoj.gov


/s/ DAVID A. O'NEAL
*Assistant United States Attorney*
Georgia Bar No. 342071
david.oneal@usdoj.gov